***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Donovan and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to receive further evidence or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and of the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. The date of the injury by accident is July 21, 2003.
4. At the time of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act; there was an employer-employee-relationship between the parties and defendant-employer's carrier was Princeton Insurance Company.
5. Defendants admit that on July 21, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment.
6. Plaintiff's average weekly wage at the time of the injury was $663.73, yielding a compensation rate of $442.50 per week.
 *********** ISSUES
1. Whether plaintiff's cervical complaints are causally related to the accepted injury by accident?
2. Whether plaintiff is entitled to any additional benefits under the Act?
 *********** EXHIBITS
1. The parties stipulated the following documentary evidence:
 a. Stipulated Exhibit #1: I.C. Forms and filings, medical records *Page 3 
 b. Stipulated Exhibit #2: Vocational rehabilitation records (supplemented post-hearing)
2. The following Exhibits were admitted into evidence:
 a. Defendants' Exhibit #1: Correspondence from Dr. Johnston
 b. Defendants' Exhibit #3: E-Bay account
 c. Defendants" Exhibit #4: Winston resume
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 45 years old. Plaintiff has completed high school and has taken some college level courses. He began working as a carpenter and roofer for defendant-employer in May 2003.
2. On July 21, 2003, plaintiff suffered multiple injuries when he was involved in an automobile accident while in the course and scope of his employment. Plaintiff's injuries to the low back, right hip and right knee were accepted as compensable.
3. On July 25, 2003, plaintiff presented to Dr. Christopher Barsanti at Orthopedics East in Greenville and was given a hinged knee brace. Plaintiff followed up with Dr. Barsanti in August 2003 and was prescribed physical therapy.
4. In November 2003, plaintiff began treatment with Dr. Jeffrey N. Pierce at Coastal Physical Medicine Rehabilitation Services. Dr. Pierce assessed plaintiff with a probable right sacroiliac strain, possible ligamentous injury and possible chondromalacia patellae. He further *Page 4 
noted that he was concerned plaintiff was developing avascular necrosis in the right hip. He administered injections into plaintiff's hip in an effort to alleviate plaintiff's symptoms.
5. In late 2003, plaintiff began vocational rehabilitation in an effort to assist him with returning to work. Plaintiff's sporadic involvement in the rehabilitation process eventually led to an Order of the Executive Secretary requiring plaintiff to comply with his physicians' recommendations or face suspension of his benefits.
6. In February 2004, Dr. Stephen L. Lester at Pamlico Orthopedic Associates treated plaintiff and diagnosed him with low back, right hip and right knee pain with no discernible etiology. Dr. Lester released plaintiff to return to light-duty work and noted that there were no physical findings upon which to base a permanent partial impairment rating. Nevertheless, Dr. Lester assigned plaintiff an 18% permanent partial impairment rating according to AMA standards and a 0% rating pursuant to North Carolina Industrial Commission guidelines.
7. In June 2004, plaintiff began treating with pain management expert Dr. Raymundo D. Millan. Dr. Millan assessed plaintiff with chronic back pain. Dr. Millan began a treatment regimen of opiate pain medication; however, plaintiff was discharged from Dr. Millan's care when he refused to take a random drug screen as required and agreed to by his signed pain management agreement.
8. On June 22, 2004, defendants filed a Form 24 Application to Terminate or Suspend Compensation for plaintiff's failure to cooperate with the provided medical treatment and refusal to communicate with the nurse case manager, which was denied. On October 12, 2004, defendants filed another Form 24 Application to Terminate or Suspend Compensation for plaintiff's failure to cooperate with the provided medical treatment and his recent discharge from Dr. Millan's care due to his refusal to undergo the necessary random drug screens. This Form 24 *Page 5 
Application was allowed by Order of the Executive Secretary on November 24, 2004, retroactive to October 13, 2004 and continuing until plaintiff demonstrated full compliance with the provided medical treatment.
9. In December 2004, plaintiff began treating with Dr. Scott R. Johnston at Johnston Pain Management. Approximately one month later, plaintiff was discharged from the practice due to plaintiff's poor attendance, past medical history and history of illicit substance use.
10. On February 23, 2005, Executive Secretary Weaver issued an Order requiring defendants to pay plaintiff benefits from December 8 to December 19, 2004 based on plaintiff's demonstration of compliance with medical treatment. Defendants have complied.
11. In March 2005, plaintiff began treatment with Dr. Scott Sanitate, who assessed plaintiff with chronic lumbosacral and hip pain. Plaintiff thereafter underwent an MRI of his right hip, which revealed no abnormality to account for plaintiff's complaints of hip pain. In particular, there was no evidence of avascular necrosis or a labral cartilage tear. Plaintiff then underwent an MRI of the lumbar spine, which revealed a very small disc herniation. Despite his treatment of plaintiff on multiple occasions during the period from March 24, 2005 through July 27, 2005, Dr. Sanitate was not able to definitively determine the cause of plaintiff's pain.
12. Based primarily upon the MRI results which he characterized as minimal, Dr. Sanitate diagnosed plaintiff with chronic lumbosacral and hip pain, placed him at maximum medical improvement, and assigned a 3% permanent partial impairment rating to the lumbar spine with permanent work restrictions consisting of no lifting more than 25 lbs. and no bending or twisting on July 27, 2005.
13. On September 15, 2006, plaintiff presented on his own to Dr. Kurt Voos at the Center for Scoliosis Spine Surgery with complaints of neck pain. Although plaintiff had *Page 6 
previously complained of headaches, this is the first record of complaints of cervical pain by plaintiff following the compensable injury by accident of July 21, 2003. Dr. Voos recommended a myelogram of the cervical, thoracic and lumbar spines.
14. On October 2, 2006, plaintiff was seen again by Dr. Sanitate who noted that his previous diagnoses remained unchanged. At the end of the visit, Dr. Sanitate opined that he had no other treatment recommendations for plaintiff and discharged him from his care.
15. In late 2006, plaintiff filed a Motion for Additional Medical Treatment, requesting authorization of testing recommended by Dr. Voos to determine whether surgery was required. By Order dated January 10, 2007, Special Deputy Commissioner Meredith R. Henderson required plaintiff to undergo an evaluation with a physician agreed upon by the parties. Dr. William F. Lestini was chosen by both parties as that physician.
16. In May 2007, plaintiff presented to Dr. Lestini at Triangle Spine and Back Care Center to undergo an evaluation. Dr. Lestini diagnosed plaintiff with low back syndrome and electrical signs of neuropathy, which he opined would be difficult to relate to plaintiff's motor vehicle accident. He also noted that there were no signs of upper motor neuron irritability to suggest cervical change or to explain plaintiff's complaints of neck pain. Dr. Lestini could not find any anatomic reason to assign plaintiff a permanent partial impairment rating or issue restrictions. An updated MRI was obtained, which revealed an extremely subtle bulge at L3-4 on the right side without impingement or stenosis. He opined that there were no findings in this study to account for plaintiff's symptoms. Dr. Lestini placed plaintiff at maximum medical improvement and released him to return to full-duty work without restrictions or an impairment rating. *Page 7 
17. In May 2007, plaintiff returned to Dr. Voos. A recent myelogram revealed some broad-based disc bulging at L3-4 and L4-5, and small disc protrusions at these two levels without significant stenosis. There were also small disc protrusions at T7-8 and T8-9 without mass effect, and severe right facet hypertrophy and spurs causing moderate to severe stenosis. In addition, a broad-based disc bulge at C4-5 and disc osteophyte complexes causing severe stenosis at C5-6 were noted. Dr. Voos opined that plaintiff's cervical condition was related more to age than to any traumatic incident. He recommended that plaintiff undergo a cervical discectomy and fusion at C5-6 and C6-7. Dr. Raymond Baule at Atlantic Neurosurgery Consultants was consulted for a second opinion. He indicated that he did not have plaintiff's previously completed studies to review, which he noted made accurate assessment difficult. Nevertheless, he indicated he felt it very reasonable to consider surgical intervention.
18. On August 7, 2007, defendants filed another Form 24 Application to Terminate or Suspend Compensation based upon plaintiff's release at maximum medical improvement without any restrictions by Dr. Lestini. The Application was denied by Order dated September 13, 2007.
19. On October 17, 2007, defendants filed a final Form 24 Application to Terminate or Suspend Compensation based upon plaintiff's release to return to full-duty work without restrictions, and plaintiff's continued non-compliance with the provided medical treatment and vocational rehabilitation. Plaintiff responded stating that defendants failed to prove that plaintiff was able to return to suitable work. Defendants thereafter supplemented their Form 24 application on November 15 and again on December 4, 2007 with additional evidence of plaintiff's non-compliance.
20. Defendants' application was allowed by Special Deputy Commissioner Henderson in an Order dated December 10, 2007. Plaintiff's benefits were suspended from *Page 8 
October 17, 2007 until plaintiff demonstrated full compliance with vocational rehabilitation. Special Deputy Commissioner Henderson specifically noted that the Commission had previously ordered plaintiff to fully comply with medical treatment and vocational rehabilitation and that plaintiff had continued a pattern of non-compliance including missing scheduled appointments, failing to communicate with the consultant and arriving late for job interviews with potential employers. The record does not reveal any reasonable basis for plaintiff's refusal to cooperate.
21. Vocational efforts were reinstated in September 2009 and continued through July 2010, at which time vocational rehabilitation efforts were discontinued. The record does not indicate whether plaintiff's indemnity compensation was reinstated after December 10, 2007. The record does indicate, however, that plaintiff was non-compliant with vocational rehabilitation services during the period such services were offered from January through July 2008 and he did not substantially comply with vocational rehabilitation efforts during the period after vocational rehabilitation services were reinstated in September 2009.
22. In addition to his failure to cooperate with vocational rehabilitation services to assist him in finding suitable employment, plaintiff has not shown that he made reasonable efforts on his own to locate suitable employment. Plaintiff has not provided sufficient excuse or reason that would have prevented him from making reasonable job search efforts. Plaintiff was released to return to work with restrictions by Dr. Sanitate. Although Dr. Lestini opined that plaintiff was capable of working without restrictions, the Full Commission gives greater weight to Dr. Sanitate, the authorized treating physician who saw plaintiff over a longer period of time.
23. In November 2009, plaintiff presented to Dr. John A. Azzato for an independent medical evaluation. Dr. Azzato opined that plaintiff would not benefit from cervical spine *Page 9 
surgery. He further opined that plaintiff's cervical condition was degenerative in nature and was not related to the compensable injury by accident of July 21, 2003.
24. On April 26, 2010, plaintiff returned to Dr.Voos who sought to provide a series of epidural injections and physical therapy before pursuing surgical intervention.
25. Based upon a preponderance of the evidence from the entire record, the Full Commission finds that any cervical condition plaintiff suffers was not caused by his compensable injury by accident of July 21, 2003.
26. Based upon a preponderance of the evidence from the entire record, the Full Commission finds plaintiff has not proven his continuing disability after October 17, 2007. Accordingly, plaintiff is no longer entitled to temporary total disability benefits.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of the employment on July 21, 2003, resulting in multiple injuries to the low back, right hip and right knee. Defendants admitted plaintiff's claim and have paid to him all of the indemnity compensation he is due as a result of his injuries. N.C. Gen. Stat. §§ 97-2(6), 97-29.
2. The preponderance of the evidence establishes that plaintiff's cervical condition was not caused by trauma or plaintiff's injury by accident. Plaintiff did not complain of neck pain for approximately three years after the compensable injury by accident. Therefore, plaintiff is not entitled to any medical compensation or indemnity benefits related to any cervical condition from which plaintiff suffers. N.C. Gen. Stat. § 97-29; Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); *Page 10 Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000).
3. Plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v.Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). Plaintiff may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, supra. When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc., supra.
4. In the instant case, plaintiff did not meet his burden to show that he continued to be disabled from any employment after October 17, 2007 under any of the Russell factors. Plaintiff reached maximum medical improvement, was not taken out of work by any medical provider, did not substantially cooperate with vocational rehabilitation services provided to assist *Page 11 
him in finding suitable employment, and did not put forth a reasonable effort to seek suitable employment on his own, even though he was capable of performing work with restrictions. Therefore, plaintiff is not entitled to disability compensation after October 17, 2007. Russell v. Lowes ProductDistribution, supra.
5. Plaintiff is entitled to have defendants pay for medical expenses incurred or to be incurred as a result of his compensable injury for so long as such medical treatment may reasonably be required to provide relief, effect a cure or lessen the period of disability, subject to the provisions of N.C. Gen. Stat. § 97-25.1.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for medical treatment for his cervical condition is DENIED.
2. Plaintiff's claim for additional indemnity compensation is DENIED.
3. Defendants shall continue to provide and pay for medical treatment for plaintiff's compensable injuries according to Industrial Commission procedures.
4. Each party shall pay its own costs.
This the ___ day of September, 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1